BEULAH SMILEY, RESPONDENT, v. BERGMORE REALTY COMPANY, INC., APPELLANT.—73 S. W. (2d) 836.

Kansas City Court of Appeals. June 11, 1934.

*Clif Langsdale* and *Roy W. Rucker* for respondent.

*Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellant.

SHAIN, P. J.—In this action Beulah Smiley, respondent, who was plaintiff below, seeks to recover from Bergmore Realty Company, a corporation, appellant herein but defendant below, for personal injuries alleged to have been received by her by reason of a fall on a stairway in an apartment building, owned and operated by defendant, in which plaintiff was a tenant at the time of the alleged injury.

It is shown by the evidence in the case that defendant is a corporation and owns and operates what is known as the New Royal Apartments situated at 921 Cherry Street in Kansas City, Missouri. It is further shown by the evidence that plaintiff was, at the time of the alleged injury, about June 15, 1930, a tenant in said apartment building.

The plaintiff alleges her fall and consequent injuries as due to a fall on the steps that were maintained in said apartment building for the use of all the tenants, including plaintiff: The plaintiff alleges that her fall was caused and her alleged injuries resulted, by reason of the negligence of defendant in maintaining a carpet on said steps "which was old and worn and in which there were holes."

The plaintiff states her injuries, as follows:

"Her right foot, leg and the muscles, ligaments, tendons, nerves, nerve fibres, blood vessels, joints, articulations and bones thereof, were bruised, contused, lacerated, strained, sprained and ankylosed, and the function and use thereof impaired; her back and spine and pelvis, and the muscles, ligaments, tendons, nerves, nerve fibres, blood vessels, joints, articulations and bones thereof, were bruised, contused, lacerated, strained, sprained, and wrenched, and because of the said injuries, the sciatic nerve of her right leg, she developed what is known as sciatica through the entire tract of said nerve; she received a nervous shock; she suffered pain of body and mind; she lost time and the earning of her labor; her earning capacity was impaired; she was compelled to incur expense for medical and hospital attention."

The defendant for its answer filed a general denial.

Trial was by jury, resulting in a verdict for plaintiff in the sum of $2500. Judgment was duly entered in accordance with the verdict of the jury and defendant has appealed.

The appellant, hereinafter referred to as defendant, in its motion for a new trial presented twenty-five (25) specifications. In its brief filed herein, defendant under its "assignment of errors" presents, in abstract form without assignment of reason, citation to record and without citation of authority, twelve (12) alleged assignments of error.

Complaint that the trial court gave improper instructions and excluded proper testimony without specifications thereof is not sufficient. The errors should be pointed out more specifically and the language used should always be in consideration of the record. It has often been declared by our appellate courts that the court will not hunt through the record for errors that are not specifically pointed out. [State v. Whitsett, 232 Mo. 511; Kirkland v. Bixby, 282 Mo. 462.]

Under points and authorities in defendant's brief, there is presented specifically assignments of errors under six (6) heads. These assignments apparently group all assignments claimed and are followed in the written argument.

When brought down to final analysis, defendant's points resolve down to the following: First, that the trial court should have directed a verdict in its behalf. Second, that the trial court, in giving plaintiff's instruction No. 1, committed error in that the

instruction was broader than the petition and did not require the jury to find the specific negligence charged and authorized recovery on theory not supported by the evidence. Third, that the court erred in refusing defendant's requested Instruction ''C,'' which instruction limited plaintiff's right to recovery, if any, to injuries received and not for other illness not so caused. Fourth, that the court committed error in admission of evidence, permitting leading questions, admitting hearsay evidence, admitting evidence of the condition of the carpet after the accident, in admitting impeachment evidence without proper foundation and as to admitting such evidence only on collateral matters. Fifth, the court erred in permitting and approving improper conduct and argument of counsel for the plaintiff.

There is reference made in the defendant's brief to the effect that the verdict is the result of prejudice on the part of the jury and the verdict is excessive. The above points seem to be embraced in the general presentation and must be considered.

On the question of directed verdict, the issue presented is as to whether or not the plaintiff was caused to fall on a stairway and receive the injuries of which she complains, by reason of negligence of the defendant in maintaining a carpet on the stairs that was old, worn and in which there were holes. Thus, is presented one simple issue and on this issue the evidence is voluminous and a record of 517 pages is filed in this case.

There is one point presented by defendant that if well founded would dispose of a voluminous record with a short opinion. As this one point comes with reoccurring frequency, under other subheads in the defendant's brief, it is well to dispose of the same now and let what we say here have application throughout the opinion and especially so in connection with the claim of error in plaintiff's instruction No. 1.

Defendant insists that, as the allegation of negligence charges there were holes in the carpet and as there is no evidence the carpet had any holes in it, there is therefore a failure of proof. The point is urged upon claimed application of principle of law declared in Bonnarens v. Lead Belt Railway Company, 309 Mo. 65, wherein it is declared where specific acts of negligence are pleaded the law places the burden of proving same and unless same are proven the plaintiff cannot recover damages.

It must be observed in this connection that when a combination of elements of negligence are pleaded as joining in the cause of injury, the omission of one of the elements that must be considered as producing the injury is fatal. [Lynch v. Railroad, 61 S. W. (2d) 918, l. c. 923.]

The allegations of negligence in the case at bar do not conform to the allegations in the Bonnarens and Lynch cases, supra, and do not

conform to allegations in other cases cited by defendant along with the above cases.

We conclude the evidence, that the carpet in question was old and worn, is sufficient evidence upon which to base a recovery herein, if it be further concluded from the evidence the old and worn condition caused the fall and injury, if so. [Bond v. City of Sedalia, 194 S. W. 740, 1. c. 741, par. 4; Meeker v. Union Electric Light & Power Company, 216 S. W. 933.]

Defendant, in urging that a directed verdict should have been given for it, presents that there is no evidence to the effect the defendant knew of the alleged condition of the carpet. The answer to that objection is that plaintiff was not an invitee. Plaintiff was a tenant and to her defendant owed a duty to maintain its provisions for going to and from her apartment in the building, in a reasonably safe condition. [Burnison v. Souders, 225 Mo. App. 1159, 1. c. 1163.]

Having disposed of the legal questions germane to the issue of directed verdict, it becomes necessary to consider the question of issues of fact going to such issue.

As before stated, the evidence in this case is voluminous and we do not propose to encumber this opinion with long quotations from the same. We deem it sufficient to say the plaintiff produced evidence to the effect that the carpet was old and worn and as she was leaving her apartment, in passing down the stairway, the heel of her right shoe penetrated the fabric of the carpet causing her to fall and causing the injury to her right foot, leg and muscles, ligaments, tendons, nerves, etc., and that she received injury to her back, spine and pelvis resulting in impaired use of the parts alleged as injured. Plaintiff further produced evidence to the effect that the resulting injuries complained of were directly due to the effect of the injuries inflicted in the fall averred as the result of the negligence pleaded.

The defendant took the position that plaintiff did not fall on the stairway as alleged and offered evidence of impeaching, contradictory statements made by the plaintiff and hospital records containing history given by plaintiff and treatment given to plaintiff to sustain its position. The defendant, as a further defense, presented that such conditions of sickness or illness as the plaintiff had were not due to any injury or trauma, as expressed by the medical profession, but were *entirely due* to an acute pelvic cellulitis, which would involve the tubes and contagious areas as well. Dr. Coffey, of whom plaintiff was at one time a patient but who was a witness for defendant, describes the plaintiff's condition, as follows:

"A. Well, all right. I would say it was an infectious synovitis of the right knee and an irritation of the sciatic nerve as it traverses the pelvis which gave her pain in her right hip and thigh.

"Q. And what, in your opinion, was the cause of that trouble? A. An infectious process of the pelvis."

All of the expert evidence produced by the defendant is to the effect that plaintiff's condition was *entirely due* to infectious process of the pelvis and the conditions of which she complained could not be due to *injury or trauma.*

All of the expert testimony shown in the record is to the effect that plaintiff's condition, as complained of, except a watery accumulation at the knee joint could be the result of infectious process of the pelvis, which infectious process could be brought about by many causes, gonorrhea included. The characteristic difference between experts testifying for plaintiff and those testifying on behalf of the defendant is that plaintiff's experts testify that the infectious process, as manifest, can be induced by trauma' and defendant's experts say it cannot.

We note here, to save repetition, that the statement of the evidence *pro* and *con* above is not only a determining factor in consideration of issue of directed verdict but also has bearing on defendant's issue as to refusal of its Instruction ''C,'' which will be discussed later on.

It is insisted by the defendant that hospital records introduced in evidence were unimpeached and conclusive. It is true that the hospital records show plaintiff suffered from pelvic infection; that she so suffered does not appear to be controverted. However, the evidence as to what caused the condition stands disputed. Plaintiff's expert testimony is to the effect that injury could produce the result and there is expert testimony that the treatment shown did not correspond to the defendant's theory of cause.

Hospital records are only conclusive when unimpeached. [Smith v. Missouri Insurance Co., 60 S. W. (2d) 730.]

We conclude the evidence of this case clearly presents· an issue of fact for the jury. Confronted as we are with the rule, that the most favorable inference from the evidence must be given to plaintiff, we hold that no error was committed in refusing to direct a verdict for defendant.

As to defendant's claim of error in instruction No. 1 given on behalf of plaintiff, it is urged that the instruction is broader than the petition. What was said by us in passing upon demurrer is equally applicable here. In the Meeker v. Union Electric Light & Power Company case, supra, the allegations of negligence were, ''the defendant negligently and carelessly permitted one or more of its said wires, then and there charged as aforesaid, to become uninsulated and broken in two, and to fall to the surface of said alley . . .'' In the opinion the court says there is charged three distinct acts of negligence, but that the proof of one is sufficient to make a case for plaintiff.

There is a clear distinction between the allegations in this case and the Burnison case, supra, and other cases of like import cited in the defendant's brief.

As to defendant's second specification of error, in instruction No. 1 the comments and citation of Burnison v. Souders, 225 Mo. App. 1. c. 1163, will suffice. We find no error in the giving of instruction No. 1 complained of.

Defendant urges that its refused Instruction "C" should have been given. The instruction is out of harmony with the defense made. Defendant asked and was given instructions No. 6 and No. 7, which are in perfect harmony with its defense.

The instructions are as follows:

"6.

"Given.

"The court instructs you that if, after fairly considering the evidence, you believe that it is equally as probable that all plaintiff's alleged suffering and disabilities were the direct result of illness and disease as that the same were the direct result of the alleged fall claimed by the plaintiff, then, if you so find, you are instructed that plaintiff cannot recover for said alleged suffering and disabilities."

"7.

"Given.

"Even if you find and believe from the evidence that the plaintiff fell or stumbled at the time and place in question, yet, if you find and believe from the evidence that the plaintiff suffered no damage whatever as a direct result therefrom, then, if you so find, you are instructed your verdict must be for the defendant, irrespective of every other fact and circumstance in the case."

The plaintiff is not seeking herein to recover for any injuries other that those she alleges as the direct result of the fall. Plaintiff urges that all the ailments and illness testified to are results of the injury. Defendant nowhere urges that plaintiff was not suffering from the illness complained of and the whole theory of the defense is that the condition existing, as to plaintiff's health, was *entirely due* to other causes than the injury she claims to have received. The review of the evidence above, as to the matter of directed verdict, clearly explains our conclusions herein. It was not error to refuse defendant's Instruction "C."

The fourth and fifth points, to-wit: As to improper admission of testimony and conduct of counsel, owing to the history of the case and the volume of the testimony and the order in which the testimony was admitted, presents vexatious problems for a court of. review.

We gather from the record in the case that the jury, whose verdict is now being reviewed, is the third jury that has been impanelled in this case. The evil result of repeated retrials of a case manifests itself in the record before us. Counsels, in anticipation of matters that occurred in former trials, are prone to interject questions out of time and out of place, often not realizing that foundations for

certain questions have not been laid in the present trial. Further, past grievances have not been forgotten and forgiven and the accumulated grievances, actual or real, find relief in disturbing outbursts of counsel.

In dealing with the above class of objection, much consideration must be given to the question of whether or not the result reached shows that the matters complained of affected the verdict or, in other words, brought such confusion into the case as to divert from the real issues in the case.

It is, of course, true, that where improper and prejudicial testimony is improperly admitted to the prejudice of a litigant, reversal should result. However, in the case at bar much of the evidence complained of would have been entirely proper if given in its place, under the rule of rehabilitation of a witness who has been attacked.

It is the rule in this State that, where a witness has been impeached as to statements made upon the stand, it becomes proper to come back in rebuttal with witnesses who testify to statements of the witness consistent with his testimony on the stand, provided said statements to the witness are shown to have been made prior to the statements testified to by the impeaching witnesses. [Jones v. St. Louis-San Francisco Ry. Co., 253 S. W. 737.]

Much of the evidence complained of is hearsay evidence by witnesses who testify to the effect that shortly after the injury plaintiff told them of falling and receiving injury on the stairway. True it is that much of this testimony was given prior to the plaintiff going upon the stand and prior to any testimony by defense impeaching her, still, in view of the fact that counsel for defense, in opening the case, told the jury there had been two other trials of the case; told them the defense would prove that plaintiff had not told the woman in charge of the apartment and others that she had received a fall; that plaintiff gave to these parties a different version of the causes of illness; and, further in view of the fact that the plaintiff and one eyewitness did testify to the fall on the stairway and defendant did introduce thereafter evidence of the character outlined in the statement, we conclude that the error was harmless.

We see no error in permitting witnesses to testify as to the condition of the carpet sometime after the time of the alleged accident as the testimony would have some probative force on the question of whether the carpet was old and further was admissible as to the question of whether the alleged tear showed as having been mended.

Throughout the record in this case, there is shown, both as to plaintiff and defendant, that there were frequent objections made to questions being leading and suggestive. While the rule as to leading questions should be observed, still, the errors in that respect are not shown to be sufficient to justify a reversal.

In the course of a long and tedious trial, there appears to have crept in immaterial testimony and testimony contradicting immaterial matters. We conclude, that such matters of this kind, as are shown by the record, were not of such prejudicial nature as to justify a reversal of the case.

As to the remarks and conduct of counsel, we would say that the record in this case cannot be cited as exemplary of what the conduct of counsels on either side should be. However, even the study of the law will not eliminate from its votaries all traits of human nature. The withholding from plaintiff's counsel of his client's hospital reports and the aspersions on the character of the plaintiff and her eyewitness and the belligerent attitude of the opposing counsels in this case gives rise to scenes in the court room that are vexing to the judge and clownishly attractive to the spectators, but disgusting to intelligent jurors.

There is evidence in this case supporting the finding of the jury that the plaintiff fell, as is alleged, and also in support of the allegation to the effect that the injuries received in the fall resulted in the consequent injuries complained of. The above being considered, the verdict of the jury shows conservatism, for if all inference from the testimony most favorable to the plaintiff be drawn, as to her suffering, loss of time, hospital and medical expenses, it would support a verdict largely in excess of the one rendered. This fact supports our conclusion to the effect that the errors complained of, as to the admission of evidence and conduct of counsel, do not show such prejudicial effect as to warrant a reversal of the case.

The writer has never been profoundly impressed with the provisions of Sections 821 and 1062 of Revised Statutes of Missouri, 1929, as legislative utterances, however, we do have a profound respect for the principle which proclaims that substantial rights shall not be affected by errors that do not materially affect the merits of an action. In a court of justice, such principle should be applied, regardless of legislative sanction, and we conclude that the principle finds application to the present case.

In the language of Judge BROADDUS in the opinion, Goodson v. Embleton, 80 S. W. 1. c. 24, we conclude: "As the judgment, in our opinion, was for the right party, we are not permitted, under the statute, to reverse the cause, on account of the error noted."

The judgment is affirmed. All concur.