**Willie L. HARRIS, et al, Appellant,**

v.

**STEELWELD EQUIPMENT COMPANY, INC., Appellee.**

**No. 88–1688EM.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1988.

Decided March 6, 1989.

---

William G. Kaseberg, Edwardsville, Ill., for appellant.

Russell F. Watters, St. Louis, Mo., for appellee.

Before McMILLIAN, BEAM, Circuit Judges and WHIPPLE,[*] District Judge.

WHIPPLE, District Judge.

This appeal is taken from a final judgment entered by the district court[1] for appellee upon the jury's answer "no" to a special verdict interrogatory number 1, finding for appellee on liability. Appellants, husband and wife, brought this action claiming damages for disabling back injuries allegedly incurred by appellant-husband when, while on the parking lot of the appellee's plant premises located in St. Clair, Missouri, he slipped and fell on accumulated snow and ice. Following an eight-day jury trial, the jury found in favor of the appellee on the issue of liability.

On appeal, appellants have raised four issues: (1) barring an expert witness for failure to comply with local rules, (2) improper district court participation through commentary and questioning, (3) improper cross-examination of appellants' expert witness, and (4) inflammatory closing argument.

## I. DISQUALIFICATION OF EXPERT WITNESS FOR FAILURE TO COMPLY WITH LOCAL RULE.

Appellants filed this action on January 21, 1985. The case was originally set for trial on September 9, 1985. For various reasons, the case was reset numerous times. Finally, the case was reset for trial on June 2, 1986. On or about May 13, 1986, appellants named as an additional witness, John A. Ebert, a meteorologist, and on May 22, 1986, appellee filed its motion in limine requesting that Ebert be prohibited from testifying due to appellants' violation of Local Rule 33.[2] Local Rule 33 became effective on or about October 16, 1985. Appellants' counsel, who is not admitted to the district court bar because of an inability to satisfy the residency requirement, did not receive notice of new Local Rule 33 and argues that he was unaware of the Rule's existence until appellee filed his motion in limine, seeking to bar expert witness Ebert.

On June 2, 1986, the scheduled trial date, counsel for appellants and appellee met in the court's chambers and it was agreed that the case would be passed due to the pendency of appellants' workers' compensation claim. At this time the court recommended that the case be taken off the trial docket until the workers' compensation case was resolved instead of being continued again. This was accomplished by stipulation. Further, counsel herein agreed that neither party would engage in any additional discovery and that the case would remain in the same posture for trial as it had been on June 2, 1986, when it was ultimately reached for trial. Counsel for appellants and appellee drafted the June 2, 1986 order which prohibited any additional discovery and disqualified Ebert for appellants' failure to comply with Local Rule 33 (Appellants' Ad. 3). This order was immediately presented to the court in handwritten form and was signed without further incident.

[*] The HONORABLE DEAN WHIPPLE, United States District Judge for the Western District of Missouri, sitting by designation.

[1.] The Honorable Roy W. Harper, Senior Judge, United States District Court, Eastern District of Missouri.

[2.] Local Rule 33 requires parties to file all expert witness names 90 days prior to the date of trial and any supplements thereto at least 60 days prior to the date of trial. The rule also provides that "the expert witness named must be made available for deposition at least 45 days prior to the date of trial," and provides that "in the event a party fails to comply with this rule, the court shall prohibit that party's expert from giving expert testimony unless the court finds that such failure was beyond the control of the parties seeking to use such expert."

On March 18, 1987, appellants moved the court to vacate the order disqualifying the expert witness because the case had yet to be reached for trial and all of the expert's materials, opinions and facts had been furnished to appellee and there could be no prejudice to appellee with the case off the trial docket. On September 16, 1987, after the case was returned to the docket for trial, the court held a hearing on the motion to vacate and denied the motion.

■ Appellants argue that under all the circumstances, including the lack of any culpability of appellants for failing to meet Local Rule 33's time limitations in June 1986, full subsequent disclosure before the case was actually reached for trial, and the resulting lack of prejudice to appellee, the court's refusal to vacate its disqualification of the witness constituted an abuse of discretion. Appellants argue that their counsel, not admitted to the district bar because of the inability to satisfy the residency requirement in place at the time, did not receive notice of new Local Rule 33 from the court or from the clerk, and was unaware of the rule's existence until the appellee filed its motion in limine, seeking to bar the expert witness Ebert. Appellants argue that they were prejudiced at trial by this disqualification of their expert because of the lack of ability to present evidence of the nature of the ground's snow-covered conditions on the appellee's premises on the day of the accident.

Appellee asserts that counsel for appellants and appellee conferred and jointly drafted the court's June 2, 1986 order, and that appellants cannot now complain of what is actually an order that appellants' own attorney agreed to, prepared, signed, and allowed to be presented to the court for the court's signature and entry without objection.

As this court stated in *Blue v. Rose*, 786 F.2d 349, 351 (1986), "[i]t is fundamental that it is within the trial court's discretionary power whether to allow the testimony of witnesses not listed prior to trial. (citations omitted). A ruling by the district court pertaining to this matter will be overturned only if there is a clear abuse of discretion." In *Blue v. Rose*, the district court had ruled that a witness would not be permitted to testify as he had not been listed by the appellees as required by the court's pretrial order and local court rule.

Likewise, in *Simplex, Inc. v. Diversified Energy Systems Inc.*, 847 F.2d 1290 (7th Cir.1988), the court excluded the testimony of plaintiff's expert witnesses because, like here, plaintiff did not comply with the local rule requiring disclosure of expert witnesses in a timely fashion. In holding that the exclusion was not an abuse of discretion, the court explained that:

> Our rules of civil procedure are designed to facilitate the complete disclosure of all relevant information before trial in order to eliminate unfair surprise and ultimately promote accurate and just decisions.

*Simplex, Inc.*, 847 F.2d at 1292.

Although it may appear that appellees would not be prejudiced by disclosure of this expert witness at such a late date because the case was taken off the trial docket and reset for trial, the fact remains that on June 2, 1986 when the case was reset for trial, discovery was completed and the case was to remain in the same posture when it would ultimately be reached for trial.

Further, appellants presented ample evidence of the condition of the appellee's parking lot at the time of the alleged accident, such that the failure of the meteorologist to testify cannot be said to prejudice the appellants in any manner. The appellant Willie Harris and his co-worker Mr. Guttenberger both testified as to the condition of the appellee's property on the day in question. Appellee did not deny the condition of the parking lot. Appellee's vice president and other employees testified that they did not *recall* what the weather conditions were on the day in question.

In addition, appellants introduced various climatic and meteorological records reflecting the weather conditions during the week preceding the alleged accident. Clearly there was sufficient direct evidence as to the condition of appellee's premises in this case. Appellants' argument that this other evidence of the weather conditions required

the expert interpretation of a meteorologist to determine the snow conditions existing in appellee's parking lot is without merit.

It is inconceivable that appellants' meteorologist could supply any additional evidence as to the physical condition of appellee's parking lot if he had not seen the lot on that date. It is further doubtful that this expert could to any degree of meteorological certainty state an opinion as to the physical conditions on appellee's parking lot based on weather records and any combination of hypothetical facts.

The district court obviously did not abuse its discretion in disqualifying appellants' expert witness pursuant to Local Rule 33, and this court finds that no prejudice resulted to the appellants in their proof of the condition existing on appellee's parking lot at the time of the alleged accident.

More important, the trial court had the opportunity to hear oral arguments presented on this matter at the hearing on September 16, 1987. The rules proscribing discovery are enacted for a reason. Once discovery has closed in a case, it is the court's discretion whether or not to allow it to be reopened. The fact that a case has been reset for trial is not automatically a justifiable reason to reopen discovery. Here, appellee's counsel agreed to continue the case only if the case remained in the same posture had it gone to trial on June 2, 1986.

■ Finally, appellants' counsel has a responsibility to know the local rules of every court before which he practices. It is not a justifiable excuse to claim that the court or the court's clerk did not provide a copy of a local rule when it is enacted. This procedure is a courtesy. It is not the responsibility of the local clerk's office to send copies of all local rules to attorneys not admitted to the court. An attorney's failure to keep himself informed of the Local Rules of every court in which he has pending cases is a "lack of diligence."

## II. CONDUCT OF THE TRIAL COURT.

Appellants argue that during the course of this eight-day trial, the district court judge's numerous interventions, argumentative comments, frequent displays of temper, and strident interrogation and intimidation of witnesses unduly restricted, impeded and interrupted appellants' presentation of their evidence and prejudicially conveyed to the jury a partiality in favor of appellee.

The standard of review in the Eighth Circuit regarding alleged misconduct of the district court was set forth in *LaBarge Water Well Supply Company v. United States*, 325 F.2d 798, 802 (8th Cir.1963), wherein this court held that it would not reverse for alleged misconduct of the court " 'unless it appears that the conduct complained of was intended or calculated to disparage the defendant in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits.' " *Id.* (quoting *Goldstein v. United States*, 63 F.2d 609, 613 (8th Cir.1933)). Further, it must also be shown "that such activities prejudiced the defendant before a new trial may be ordered on such grounds." *Id.* (quoting *Woodring v. United States*, 311 F.2d 417, 420 (8th Cir.), *cert. denied*, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963)).

Appellants have listed six instances of perceived judicial misconduct, which include: (1) during the testimony of Doug Enke, appellants' witness and appellee's employee, appellants were prohibited from using leading questions, were required to wait a week before attempting to impeach Enke, and were criticized on "the relative fairness between counsel and the witnesses" (App. Brief 18); (2) during the testimony of appellants' former co-worker, Mr. Guggenberger, the trial judge unduly restricted and disrupted his testimony during direct examination; (3) the trial court unduly restricted and made unfair commentary during the direct examination of plaintiff; (4) the court unfairly castigated plaintiff's former terminal manager, Mr. Schoeck; (5) the court made improper commentary and influence over appellants' witness Mr. Kutchback; (6) the court cross-examined, disputed, rebuked and in short, discredited and intimidated appellants' economic expert witness, Dr. Stevenson.

Appellant contends that the trial court's conduct, remarks, and questions were so biased that appellant did not receive a fair trial. Appellee, on the other hand, asserts that the district court's intervention, questions and comments were merely attempts to clarify the evidence, retain control over the trial, and in any case, appellants failed to object to the court's comments at trial and have therefore waived any complaint of alleged error.

In *Warner v. Trans–America Insurance Co.,* 739 F.2d 1347 (8th Cir.1984), this court set out the proper viewpoint on the trial court's role as follows:

A trial judge should never assume the role of advocate, *e.g., United States v. Gunter,* 631 F.2d 583, 587 (8th Cir.1980), and must preserve an attitude of impartiality in the conduct of a trial (citations omitted). It is also true, however, that a trial judge may question witnesses or comment on the evidence. A federal judge is more than a "mere moderator or umpire in the proceedings and he may take an active role in conducting the trial and developing the evidence," (citations omitted). In order to reserve on the grounds of excessive judicial intervention, the record must either "disclose actual bias on the part of the trial judge [or] leave the reviewing court with an abiding impression that the judge's remarks in questioning of witnesses projected to the jury an appearance of advocacy or partiality." *United States v. Singer,* 687 F.2d 1135, 1141 n. 10 (8th Cir.1982), *rev'd on rehearing,* 710 F.2d 431 (8th Cir.1983). *Warner,* 739 F.2d at 1351.

First, as to appellants' examination of Doug Enke, it is clear that the district court did not abuse its discretion and the appellants were not prejudiced by the district court's actions. Appellants complain that counsel was prohibited from using leading questions when examining Enke, and was criticized on the "relative fairness between counsel and the witness" (App. Brief, p. 18). The conversation of which appellant complains (Tr. 79, 80) took place outside the presence of the jury and therefore did not result in any prejudice to the appellants. *See Coast to Coast Stores, Inc. v. Womack–Bowers, Inc.,* 818 F.2d 1398, 1401–1402 (8th Cir.1987).

Indeed, the trial court was correct in sustaining appellee's counsel's objection to the leading form of questions posed to Enke, appellants' witness on direct examination. It is part of the court's responsibility to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence to insure effective presentation. *See Fed. Rule of Evid.,* 611(a). As for appellants' complaint that they were not allowed to impeach Enke until he was re-called a week later for cross-examination under Rule 611(c), this court fails to see how this prejudiced appellants' case in any way, or is an abuse of discretion by the trial court. Appellants were allowed to impeach Enke.[3]

Second, appellants complain that the judge unduly restricted and interrupted the presentation of witness Mark Guggenberger, appellants' former co-worker.[4] As for restricting Guggenberger's testimony, the trial court was correct in not allowing his testimony as an expert until he was qualified. *See* Fed.Rule of Evid. 611(a)(1).

---

**3.** The subject of impeachment was whether Enke refers to a specific area of the defendant's yard as the "unloading zone or receiving zone." What Enke would refer to as one area of the yard or another is irrelevant, and any impeachment with regard to this matter would not be pertinent because there was no assertion by defendant that plaintiff was in the wrong area, or that there was not snow in certain areas on the parking lot in question.

**4.** On direct examination, Guggenberger was asked, "Can you describe briefly for the court

and jury generally what the job of a driver for Complete Auto back in February of 1980 involved?" Defense counsel objected and the court sustained the objection and ruled that if appellants' counsel wished to elicit opinion or expert testimony from Guggenberger, he would have to qualify Guggenberger first (Tr. 118). Appellants chose not to qualify Guggenberger and the court allowed appellants to question Guggenberger with regard to what he did as a driver for Complete Auto (Tr. 119–120).

As for the complaint that the court unduly disrupted Guggenberger's testimony, the record reflects on more than one occasion, the district court had to instruct Guggenberger not to volunteer testimony.[5] It is clear from the record in this case that the court's interruption and direction concerning this witness's testimony was clearly proper. *See Cowens v. Siemens–Elema AB*, 837 F.2d 817, 823 (8th Cir.1988). Again, appellants did not object to the court's comments at trial and have therefore waived any complaint of alleged error.[6]

Third, and somewhat related, appellants complain that the court unduly restricted and made unfair commentary during the direct examination of the appellant Willie Harris. Upon review of the record in this case, it becomes painfully clear that the trial judge was attempting to have the trial conducted efficiently and clearly enough that the jury could understand the evidence and return a fair verdict. And again, appellants failed to object to the court's comments at trial and any complaint appellants have now has been waived.

As for appellants' argument that the district court unfairly "castigated" appellants' former terminal manager, Mr. Schoeck, the court finds no abuse of discretion in the record.[7] In any case, appellants failed to object to the court's comments at trial and any complaint of alleged error has been waived.

Concerning Mr. Kutchback, appellants contend that the district court erred and prejudiced their case in ordering the jury out while the court lectured Kutchback in regard to lying in federal court. It is apparent from the record that the judge was trying to control the evidence and the witnesses in the courtroom and simply took the required corrective measure outside the presence of the jury in order to correct the deliberate inconsistencies in the testimony of the witness. These proceedings were held outside the presence of the jury, and there was no prejudice to appellants. *Coast to Coast Stores, Inc., supra.*

■ Finally, appellants contend that the district court discredited and intimidated appellants' economic expert witness, Dr. Stevenson.[8] The record reflects that Dr. Stevenson was allowed to testify as to his opinions that appellant had sustained an earning loss, both past and future, and appellants introduced into evidence an exhibit prepared by Stevenson, indicating the same. The district court asked Dr. Stevenson questions in an attempt to clarify for itself as well as the jury some very confusing and technical testimony. This is the district court's right, as well as its duty. *See Federal Rule of Evidence* 614(b). Indeed, it is entirely proper for the district court to question witnesses in order to clar-

5. On one occasion, Guggenberger started gratuitously testifying while plaintiffs' counsel was marking an exhibit, and on another occasion Guggenberger answered a question and began testifying narratively (Tr. 124, 125).

6. Consequently, our review at this juncture is for plain error. Federal Rule of Civil Procedure 51. As previously noted, the court is hesitant to reverse on the basis of alleged misconduct unless it can be said that the trial judge's conduct "pervaded the overall fairness of the proceedings." *Cowens*, 837 F.2d at 823 (quoting *United States v. Bland*, 697 F.2d 262, 265 (8th Cir. 1983)).

7. Appellant was claiming that he was not competitively employable and was claiming future wages as damages. In compliance with pretrial orders, defendant listed appellant's work records as exhibits which may be used at trial. Mr. Schoeck testified that appellee's exhibits G–6, G–7 and G–8 were business records concerning the appellant and were part of the appellant's file. These exhibits reflect that appellant missed many days of work for health reasons prior to the date of the alleged occurrence. Any evidence which would show appellant's health and prior inability to work is clearly relevant. The court notes here that the appellant's prior back condition was a hotly-contested issue in this case. Mr. Schoeck was directed by subpoena to arrive at the court with appellant's entire file, which he failed to do. The trial court advised Schoeck that in a federal lawsuit there is no "playing around" and you must comply with a valid subpoena (Tr. 372–373).

8. At the outset, it should be noted Dr. Stevenson's testimony concerned only the issue of the amount of damages and any alleged error on the court's part could not be prejudicial to the appellant in that the jury found the appellee not liable for appellants' damages.

ify factual issues. *See Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104, 1111 (8th Cir.1988) (citing *Jaeger v. Henningson, Durhamt, Richardson, Inc.*, 714 F.2d 773, 777 (8th Cir.1983)). Here the trial court limited its questions to those necessary in order to clarify the factual issues and it was not the kind of continual interruption which would result in prejudice because it would lead the expert off into an irrelevant discussion or completely confuse and/or misstate what the expert said. *See Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1275 (8th Cir.1987).

Again, appellants did not object to the court's questions as required by Fed.Rules of Evid. 614(c) and, therefore, have waived any alleged complaint of error. Nevertheless, the court's comments were not an abuse of discretion and appellants were not prejudiced thereby. As this court stated in *Lewy, supra:*

> It does appear that the practice of allowing comments on the evidence by a trial judge is at considerable variance with the concept that the judge should retain and present an air of impartiality, particularly in jury trials where the jury are the fact finders. Thus, the trial court is often in the difficult position of needing to clarify the evidence while still maintaining an air of impartiality. This feat requires the judge to operate within a restricted range; but, obviously the judge must be accorded a fair measure of discretion in harmonizing the concepts of opinion comment with that of impartiality.

*Lewy*, 836 F.2d at 1111.

Reviewing courts employ a balancing process to determine whether the trial judge's comments have destroyed the overall fairness of the trial. *Van Leirsberg v. Sioux Valley Hospital*, 831 F.2d 169 (8th Cir.1987) (quoting *United States v. Bland, supra* at 265).

■ In this case, the court is satisfied that the trial court's comments and ques-tions concerning the witnesses and evidence, when read in context, did not destroy the overall fairness of the trial. Indeed, this is one of those circumstances in which "[w]e ... recognize that there may well be situations where a judicial comment is necessary and proper." *Lewy*, 836 F.2d at 1111. Our review reveals that there is simply no evidence that the district court became an advocate in this trial, nor is there any evidence that appellant was prejudiced by the limited number of questions and comments the court did make. Further, the court's intervention in this case was necessary in order to expedite the presentation of the evidence. This is entirely clear from the record of this eight-day trial of a slip-and-fall case.

## III. CROSS EXAMINATION OF EXPERT WITNESS.

■ During appellee's counsel's cross-examination of appellants' expert rehabilitation witness, David Kutchback, counsel inquired about a letter written by Mr. Kutchback to Mr. Nelson, appellants' workers' compensation lawyer. Appellants' lawyer objected to this cross-examination on the basis of hearsay. Appellee's counsel maintained that he was questioning appellants' expert in regard to what appellants' attorney, Mr. Nelson, stated to the expert. Mr. Nelson's statements are admissions by a party opponent and are clearly admissible pursuant to Federal Rule of Evidence 801(d)(2)(D).[9]

The standard of review in regard to the district court's evidentiary rulings require a finding that there has been "a clear abuse of discretion." *Adams v. Fuqua Industries Inc.*, 820 F.2d 271, 273 (8th Cir. 1987). Here, if the district court had sustained appellants' objection, it would have been a clear abuse of discretion requiring reversal. *Mahlandt v. Wild Canid Survival and Research Center, Inc.*, 588 F.2d 626 (8th Cir.1978). *See also, Russell v. United Parcel Service*, 666 F.2d 1188 (8th

---

9. Federal Rule of Evidence 801(d)(2)(D) provides:

> A statement is not hearsay if the statement is offered against a party and is a statement by

the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

Cir.1981); *U.S. v. Margiotta*, 662 F.2d 131 (2d Cir.1981).

■ Second, cross-examination of Mr. Kutchback with the letter was proper for impeachment purposes. At the time appellant objected to cross-examination of Mr. Kutchback upon the letter on the basis of hearsay, counsel for appellee stated that such testimony went to the witness's credibility.[10] The cross-examination as to Mr. Kutchback's prior opinions and the consequences thereof are clearly relevant to show credibility and/or bias.

## IV. INFLAMMATORY CLOSING ARGUMENT.

■ As a final ground of error, appellant contends that appellee's counsel's improper, inflammatory closing arguments, left uncorrected by the trial court, deprived appellants of a fair trial. In his closing

argument, appellee's counsel first discussed appellant's prior back condition (a hotly contested issue in this case) and then argued that the inconsistent testimony of the rehabilitation expert concerning whether appellant was competitively employable indicated that perhaps appellant had been manipulated in this litigation.[11] Appellant argues that there was no factual basis for appellee's counsel's inflammatory argument and it had no purpose other than to arouse resentment and prejudice in the jury. Appellant argues that the closing argument of appellee's counsel is a natural outgrowth of the district court's error of allowing inadmissible hearsay testimony, the letter, over objection. This issue was dealt with previously, above.

The standard of review in assessing whether the district court abused its discre-

10. Mr. Kutchback had testified on direct examination that appellant was not competitively employable at the present time. On cross-examination, appellee's counsel asked Mr. Kutchback if Mr. Nelson had "communicated with him," and "did Mr. Nelson say anything to you" concerning the employability of the appellant (Tr. 501–502). The letter at issue was written in 1983 by Mr. Kutchback to Mr. Nelson and indicated that it was a possibility that appellant could be employable and as a result of this letter, Mr. Kutchback was taken off the case for almost two and one-half years until Mr. Nelson's predecessor, appellants' trial attorney, contacted him. Thus, Mr. Kutchback was cross-examined by appellee's counsel as to statements made by him to Mr. Nelson and these statements are contrary to his testimony on direct. Clearly, this cross-examination was relevant. Mr. Kutchback testified that appellant could not work.

11. Specifically, appellant argues that appellee's counsel springboarded to the unfounded theme that appellant, although a fraud, was an innocent pawn of corrupt, unethical counsel. That portion of appellants' closing argument which appellant complains about is:

Mr. Walters (appellee's counsel): He gets lawyers, he gets a doctor. He even gets a rehab expert. And when I say "he," what happens sometimes, ladies and gentlemen, is that somebody may have been an honest person or somebody who went in and was simply seeking some treatment and get better, all of a sudden, some lawyers get involved and their getting better takes a side seat to maybe winning a lotter. And after the lawyers get involved, then it's, I didn't have any problem before, then I was fine, I was fine (Tr. 741).

\* \* \* \* \* \*

Then he gets, the plaintiff's lawyer gets what they call a rehabilitation specialist, Mr. Kutchback. I'll say this for Mr. Kutchback, at least he was honest enough to 'fess up to what was attempted to be done.

Mr. Kaseberg (appellant's counsel): I object, Your Honor, I don't know if that's an accusation against me, my client or what.

Mr. Walters: He'll know what the accusation is when I'm ready to level it, all right? What I'm talking about here, ladies and gentlemen, is a rehab specialist hired by plaintiffs' attorney. The rehab specialist tells the plaintiffs' lawyer, look, I think I can get this guy back to work. And what does he do, what does this Mr. Nelson do? Mr. Nelson takes him, takes him off ...

Mr. Kaseberg: Your Honor, that has nothing to do with this case.

Mr. Walters: Mr. Nelson had a lot to do with this case.

The Court: Be overruled. Let's proceed. The jury will have to recall the testimony.

Mr. Walters: Mr. Nelson takes the guy off the case, as I put it, he fires him, says I don't want you to put him [the plaintiff] back to work. Keep him off work. Don't let him work: the lotteries, ladies and gentlemen. They want to come in here, throw figures up like this. Keep the guy off work. What's the guy [plaintiff] supposed to do? I don't necessarily blame Mr. Harris. What's he supposed to do? He's got the lawyers telling him don't go back to work, we can relate this up to an incident you say happened at Steelweld and we'll go to a jury and ask them to give you $2,000,000. We'll take our percentage, you go home and we'll give you a good shake (Tr 743–744).

tion in overruling appellants' objection to defense counsel's closing argument was set forth in *Vanskike v. Union Pacific Railroad Co.*, 725 F.2d 1146, 1149 (8th Cir.1984). wherein this court held that:

> Closing arguments are made under the direct control of the trial court. Argument of counsel is a procedural question to be determined by federal law (citations omitted). Under federal law, considerable discretion is given to the trial court to control arguments (citations omitted). The standard of review on appeal is clear. "The district court is in a better position to determine whether prejudice has resulted from closing argument, and the appellate court will not disturb the district court's ruling unless there has been an abuse of discretion." *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188 (8th Cir.1981) (quoting *McDonald v. United Airlines, Inc.*, 365 F.2d 593 (10th Cir.1966)).

Further, "to constitute reversible error, statements made in oral arguments must be plainly *unwarranted* and clearly injurious." *Vanskike v. Union Pacific Railroad Co.*, 725 F.2d at 1149 (emphasis added). In this case, appellee's counsel's closing argument was supported by the evidence and the district court's overruling of appellants' objection thereto was not an abuse of discretion.[12]

A fair and proper inference from the testimony of Mr. Kutchback regarding Mr. Nelson's statements, is that in 1983, two years after the occurrence, appellant, by and through his agent, Mr. Nelson, was thwarting any effort to secure employment for himself. Appellants' own expert testified that Mr. Nelson stated to him: "We really don't want to set aside what we've been fortunate enough to obtain for this man." (Tr. 499–503). The inference from

this statement is that appellant was not going to risk a finding of employability even if he were in fact employable. This inference is supported by the fact that appellant did not report to two of his treating physicians that he fell at appellee's premises and reported to Dr. Cole that he fell at another location. Indeed, there is ample evidence in the record to support appellee's counsel's characterization of these events during closing argument.

This court has held that argument describing the appellants' case as false and fraudulent is proper if facts supporting that conclusion are developed at trial. *Sanden v. Mayo Clinic*, 495 F.2d 221 (8th Cir.1974). Such closing argument is proper if "supporting facts were developed at trial and the conclusions, if such evidence was believed, was at least a permissible one." *Sanden v. Mayo Clinic*, 495 F.2d at 227. Further, it is significant that appellants' counsel has not argued another interpretation of the evidence.

A careful examination of the closing argument in the instant case reflects that counsel for appellee merely summarized the facts and drew proper inferences therefrom. The evidence of possible fraud with regard to the circumstances of Mr. Kutchback's involvement with appellants' prior counsel is reinforced by the medical evidence developed during trial which clearly indicate there was some doubt as to whether appellant was ever injured on appellee's property. Indeed, the credibility of Mr. Kutchback was properly called into question during appellee's counsel's cross-examination. Thus, it was not an abuse of discretion to overrule appellants' objection to appellee's closing argument as ample supporting facts were developed at trial to support appellee's counsel's argument and

---

**12.** It must be remembered that at trial appellants' counsel called Mr. Kutchback as an expert witness and Mr. Kutchback testified on direct that Bob Nelson, appellant's workers' compensation lawyer, had referred appellant to him on September 17, 1981 (Tr. 473, 476–477). Mr. Kutchback testified that *at that time* his opinion was that appellant was not competitively employable due to his present physical condition (Tr. 478). In addition, Mr. Kutchback testified

at trial that it was his opinion that *at the present time*, appellant was still not competitively employable (Tr. 486).

On cross-examination, the appellants' counsel questioned Mr. Kutchback in regard to the letter between Kutchback and Nelson which reflected that in 1983, after Kutchback suggested to Nelson that appellant might be capable of employment, Nelson took Kutchback off the case.

the conclusion to be drawn therefrom, referenced in appellee's closing argument, is permissible.

Finally, appellants argue that it was improper for counsel for appellee to state to the jury that they should set the standard for the community when they return a verdict of no liability in the instant case. Specifically, appellee's counsel stated:

It's a difficult thing to do, but I'm asking you to do that, write "no," and you send the message, I'm not only talking about this little courtroom with these people, I'm telling you that if this goes out, you set the standards for our community. You six people will set the standards in this case and the next case that's tried. These are the standards that are set, and I'm asking you to do the difficult thing, ladies and gentlemen, write down simply "no" on that verdict form (Tr. 747).

Appellant argues that the extreme resulting prejudice to appellant is plain as appellee's counsel linked this "send a message" argument to the jury's "no" answer to the special verdict controlling liability in the case. Appellant argues that this defeated the special verdict's purpose of focusing the jury's decision exclusively on the material facts of the case. Appellant argues that although appellant's counsel made no objection, the inexcusability of the plea and the resulting prejudice to appellants is so egregious as to constitute fundamental error and require reversal.

When considering alleged prejudicial effects of argument, this court has held:

It is fundamental that, this court will refuse to consider a question which is raised for the first time on appeal and which was never presented to nor passed upon by the district court.

*Harris v. Zurich Insurance Co.*, 527 F.2d 528, 532 (8th Cir.1975) (citing to and quoting from *Ludwig v. Marion Laboratories, Inc.*, 465 F.2d 114, 117 (8th Cir.1972)).

Appellants concede that no objection was made to appellee's closing argument and in an attempt to avoid this fundamental rule of trial and appellate procedure, have cited case law for the proposition that defense counsel's argument constitutes "fundamental error." [13] Appellant's contention is without merit and the case law relied upon is inapplicable. At any rate, appellants failed to raise this alleged point of error at trial and have, therefore, waived any objection thereto. *Harris v. Zurich Insurance Co.*, 527 F.2d at 532.

CONCLUSION.

In accord with this opinion, the judgment and the order of the district court are hereby affirmed.

**13.** Appellant has cited two federal cases, *Vanskike v. ACF Industries, Inc., supra,* and *San Antonio v. Timko,* 368 F.2d 983, 986 (8th Cir. 1966), and two Missouri cases, *Fisher v. McIlroy,* 739 S.W.2d 577, 582 (Mo.App.1987) and *Smith v. Courter,* 531 S.W.2d 743, 748–749 (Mo. Banc 1976). Appellant cites these cases for the proposition that defense counsel's closing argument constitutes fundamental error. First, the law and facts of *Timko* are not on point. *Vanskike, supra, Fisher, supra,* and *Smith, supra,* stand for the proposition that a complaining party may not request a jury to award punitive damages unless punitive damages have been pled and there is evidence in the record to support the submission of the issue of punitive damages to the jury. The courts have reasoned that arguments by the complaining party's counsel which suggest to the jury that the verdict will deter others and/or punish the defendant are, in effect, arguments requesting that the jury award punitive damages. Without pleading punitive damages and proof thereof, the courts have held that it is reversible error for the complaining party's attorney to utilize a "send a message" argument because the evidence will not support the argument for an award of punitive damages. This proposition is not applicable to defense counsel's argument. Appellee's counsel was not requesting that the jury award punitive damages. Appellants realized this at trial and did not object to the argument.